## Case No. 16,610.

### UNITED STATES v. VAN SLYKE.

[8 Biss. 227.] 1

Circuit Court, W. D. Wisconsin. June, 1878.

INTERNAL REVENUE—WHISKEY TAX—MEANING OF "PROPRIETOR"—INTEREST OF DEFENDANT —CROOKED WHISKEY.

1. In section 3251, Rev. St., by which it is provided that every proprietor of any still shall be liable for taxes on the distilled spirits produced therefrom, the word "proprietor" is used in the sense of an owner, who, whether in personal possession or not, has the exclusive right to, and the control over, the premises.

2. A lessee is a proprietor, but the lessor is not.

3. Under the same section, in order to hold the defendant liable as being interested in the use of the still, a direct interest in the business must be shown. His interest as a lessor, or as a creditor who expected to collect his claims if the business proved successful, is not sufficient.

4. Knowledge by defendant that illicit spirits were being manufactured on the premises, does not render him liable for the tax.

This action was brought to recover the sum of twenty-two thousand and five hundred dollars, alleged to be due the government from the defendant [N. B. Van Slyke] for taxes upon illicit spirits manufactured at the Middleton distillery, near Madison,

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Wis., between September 3, 1873, and April 24, 1874. The complaint alleges that the defendant was the owner and proprietor of the distillery and distillery premises at the time of the manufacture of the spirits, and interested in the profits of such manufacture with one Alexander L. Rogers and Charles H. Bunker, who had the immediate control and management of the business. The defendant admitted that he held the title in fee to the premises. but denied that he was the proprietor or interested in any way in the manufacture of the liquors. The evidence was, that prior to 1873 the premises were owned by one Jacob Lentz, and that Lentz, and subsequently Lentz & Rogers, carried on the business; that the defendant, as president of the First National Bank of Madison, advanced money to Lentz & Rogers, and discounted their paper to a large amount to enable them to carry on this and other branches of business. and that defendant, to secure these advances. took a mortgage from Lentz on the distillery premises, which was foreclosed, and the premises bid in by the defendant. After this the distillery was idle for some months, until on the 11th of August, 1873, the defendant let the real estate to Rogers, who entered again into the manufacture of spirits, Rogers obtaining a license from the government to carry on the business until May 1, 1874, and defendant, as owner of the premises, gave his consent as required by law that the premises be used for that purpose, and stipulated that the lien of the United States for taxes and penalties should have priority of his rights, and that in case of forfeiture of the premises the title should vest in the United States. From September, 1873, until April 24, 1874, Rogers, in connection with one Charles H. Bunker, whom he took in as a secret partner, manufactured a large quantity of illicit wines and spirits, which they took to Madison, where they were rectified under the immediate management of Bunker, without the payment of the taxes. On April 24, 1874, the distillery and distillery apparatus were seized by the officers of the government, and they, as well as the real estate, forfeited to the United States. During all this time the defendant, as president of the bank, continued to advance money to Rogers and to discount his paper, to enable him to carry on the business, in the hope of getting back, as he alleges, some of the amount previously advanced to Rogers and to Lentz & Rogers. The attorney for the government claimed that such money was advanced as partner in the business and as proprietor of the distillery; and claimed, also, that if the evidence did not establish this fact, and that the defendant was interested in the profits of the manufacture, that he was still liable for the taxes as proprietor of the premises under section 3251, Rev. St., which provides as follows: "Every proprietor or possessor of, and every

person in any manner interested in the use of any still, * * * shall be jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom."

J. C. McKenna, for the United States.

J. C. Sloan and Wm. F. Vilas, for defendant.

BUNN, District Judge (charging jury). The law makes every proprietor or possessor of, and every person in any manner interested in the use of any still, distillery or distilling apparatus, liable for the taxes imposed by law on the distilled spirits produced therefrom. The government, who is the plaintiff, in the case, alleges that the defendant, during the time in question, was the owner and proprietor of the still and had an interest as partner, or otherwise, in its use. The defendant admits, and the evidence shows, that he was the owner of the premises on which the distillery was situated, but he denies that he was the proprietor in the sense in which that word is used in the statute, and denies that he had any interest in the use of the still. And this constitutes the issue which the jury are to try. The issue is simple, and all I desire is to call your attention to it, and to state the law applicable to the case without restating the evidence which is fresh in your minds and has been fully and ably discussed by counsel on both sides.

First, then, was the defendant the proprietor of the distillery from August 11, 1873, to May 1, 1874, during the time when it is charged the spirits were manufactured on which the taxes have not been paid? The evidence shows that he was the owner of the distillery premises and had let them out by written lease to one Alexander L. Rogers, who was in possession of and running the still., I think the word "proprietor" is used in the statute in the sense of an owner, who, whether in personal possession or not, has the exclusive right to, and the control over, the premises. A person in possession of premises as lessee under a lease for years, has himself, as against the general owner and all the world, the right to the exclusive possession, control and management of the same during the continuance of the lease, and is for all such purposes as much the proprietor of the premises, for the time being, as though he held the legal title in fee. And I think it was never the intention of the law to make the general owner of premises so leased, and not himself having any right to the possession, control or management of the premises or business carried on, and having no interest in the distillery business except to receive his stipulated rent, liable for the payment of the taxes imposed by the government on the spirits distilled. I think, on the contrary, the purpose of the law is to make every person, whether possessor or proprietor, who has any control of the business, and every person having an interest in the use of the still, whether possessor, owner, partner, or otherwise, liable for the payment of taxes so imposed. So, I think, if you should find the facts to be that Rogers or Rogers and Bunker, during the time in question, had the exclusive possession of the distillery under the lease from the defendant. and the exclusive control and management thereof, and that defendant had no other interest than to get the rent, or to obtain payment of the indebtedness due from Rogers, or Lentz & Rogers, to the bank on account of the then present or previous deal. the fact of his being the owner of the real estate and letting it to Rogers, would not render him liable to the payment of the taxes imposed on the highwines produced at the distillery. And in that case you will next inquire and determine from the evidence whether the defendant was in any manner interested in the use of the distillery during that time; for if he was, then he should pay the taxes. But I think there is no doubt that the interest, to make defendant liable, should be a direct interest in the business, and not merely an indirect interest in the success of the business as belonging to other persons. If the business was in fact his, or he was interested as a secret partner, or otherwise in the profits, then he will be liable for the taxes on the products of the still. But if the business belonged to Rogers, or Rogers & Bunker, and they alone were entitled to the proceeds, and the defendant was only interested in having them succeed because their success would the better enable Rogers or Bunker to pay moneys advanced by the bank of which defendant was president and stockholder, to Rogers, or to Lentz & Rogers, or to Bunker, for the purpose of paying taxes on the highwines, or to carry on the business, then I think the defendant would not be liable. Nor is the fact of his having bought cattle to be fed at the still, sufficient of itself to show such an interest in the distillery business as would make him liable for the taxes; but of course the evidence upon that subject should be considered by the jury in connection with the rest of the testimony in considering and determining what the true character of the whole transaction was, and whether or not defendant had in fact an interest in the profits of the distillery business. That question the jury are to determine fairly from a full and comprehensive view of the whole case, and from the weight of the testimony taken as a whole. What do you believe? What is the conviction produced in your minds by the evidence? You are the sole judges of the weight to be given to the testimony of the several witnesses, and upon the testimony, taken in connection with the contracts, papers, and record evidence in the case and all of the circumstances, you

are to determine the fact. The written contracts introduced in evidence do not, upon their face, show any such interest on the part of the defendant as would render him responsible for the taxes. But it is insisted by the government attorney, and his evidence is intended to show, that these contracts do not represent fairly the real transaction, but on the contrary, were not made in good faith, and were intended rather as a cloak to cover the real transaction according to which it is alleged the defendant had a direct and substantial interest in the profits and products of the distillery business. As the lease and contracts are fair on their face, and do not, of themselves, show any such interest on the part of the defendant, the burden is on the government to satisfy you by a preponderance in the weight of testimony that these papers and agreements do not represent truly the whole case, and that the defendant, notwithstanding, had a real interest in the business. And this question is fairly presented by the evidence, and must be submitted for your careful consideration and determination.

The business of rectifying is distinct in the law from the business of distilling; and has no necessary connection with it, and if you shall believe from the evidence that defendant had an interest either alone or with Bunker in the business of rectifying, that of itself would not render him responsible for taxes on the highwines used in that business, though he may have known that the taxes on the wines received from the distillery had not been paid. But it would be necessary to go further and show that he had an interest in the distillery business itself. But this, of course, should not prevent a full consideration by the jury, of the circumstances attending the defendant's relations with Bunker in respect to the rectifying business, and the real nature of the transaction between them, as bearing upon the main question at issue in the case—to-wit: whether or not defendant was in any manner interested in the use of the still. For in determining that question, as before said, it will be your duty to consider all the evidence and circumstances in the case. Again, the jury will understand that the defendant's liability to the payment of the tax, turns upon the question of his being a proprietor or possessor of the still, or interested in the use of the still, and not upon the question of his knowledge or want of knowledge, as to how the distillery was being run, whether "straight" or "crooked." So that the fact of defendant's having notice that illicit wines were being made by Rogers at the distillery would not make him liable for the tax, if all the interest he had in the success of the business was to collect the debt due the bank for rent and for moneys advanced. But his knowledge, if he had such knowledge, that the distillery was being run contrary to law and that the taxes were not being paid, and his conduct in relation thereto, are all to be considered as part of the evidence in this case, and it is for you to say how far they bear upon the question of his interest in the distillery business.

Nor would the fact, if such were the fact, that Bunker after he went into the rectifying business, formed a secret partnership with Rogers in the distillery business, unknown to defendant, though you may believe that defendant was interested in the rectifying business alone or with Bunker, render the defendant liable for the taxes on the spirits distilled at the distillery.

Verdict for defendant.

Motion for new trial heard before DRUMMOND, Circuit Judge, and BUNN, District Judge, and overruled.